1  JAMES A. KOPCKE (SBN 88567)
   GOLDEN · KOPCKE, LLP
2  22 Battery Street, Suite 610
   San Francisco, CA 94111
3  Tel:(415) 399-9995; Fax:(415) 398-5890

4  RICHARD J. ARCHER, ESQ (SBN 20720)
   ARCHER & HANSON
5  3110 Bohemian Highway
   Occidental, CA 95465
6  Tel:(707) 874-3438; Fax:(707) 874-3438

7  Attorneys for Plaintiffs SHERI L. KENDALL, dba BALA HAIR SALON,
   JAMES MASER, MAIZ HOLDING COMPANY, dba PICANTE COCINA
8  RESTAURANT, on Behalf of Themselves and All Others Similarly
9  Situated

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13  SHERI L. KENDALL, dba BALA HAIR ) Case No. C 04 4276 JSW
    SALON, JAMES MASER, MAIZ         )
14  HOLDING COMPANY, dba PICANTE     ) **FIRST AMENDED**
    COCINA RESTAURANT, on Behalf of  ) **CLASS ACTION ANTITRUST**
15  Themselves and All Others        ) **COMPLAINT AND DEMAND**
    Similarly Situated,              ) **FOR JURY TRIAL**
16                                   )
17            Plaintiffs,            )       **CLASS ACTION**
                                     )
18       vs.                         )
                                     )
19  VISA U.S.A. INC., MASTERCARD     )
20  INTERNATIONAL, INC., BANK OF     )
    AMERICA, N.A., a subsidiary of   )
21  BANK OF AMERICA CORPORATION,     )
    WELLS FARGO BANK, N.A., a        )
22  subsidiary of WELLS FARGO &      )
    COMPANY, U.S. BANK, N.A, a       )
23  subsidiary of U.S. BANCORP,      )
                                     )
24                                   )
             Defendants.             )
25                                   )
                                     )
26                                   )
27  _____)

28

Plaintiffs SHERI L. KENDALL, dba BALA HAIR SALON, and JAMES MASER, MAIZ HOLDING COMPANY, dba PICANTE COCINA RESTAURANT aver for their complaint against VISA U.S.A. INC. ("VISA") and MASTERCARD INTERNATIONAL, INC. ("MASTERCARD"), BANK OF AMERICA, N.A., a subsidiary of BANK OF AMERICA CORPORATION, WELLS FARGO BANK, N.A., a subsidiary of WELLS FARGO & COMPANY, U.S. BANK, N.A, a subsidiary of U.S. BANCORP, upon knowledge with respect to their own acts and upon information and belief with respect to all other matters, as follows:

JURISDICTION

1.   Jurisdiction and venue of this action is under 15 U.S.C. §§ 15(a) and 26.

2.   Defendants or their agents inhabit or are found or reside in the Northern District of California.

3.   VISA and MASTERCARD each operate as joint ventures that are created, owned and governed by their thousands of members which are primarily banks, including the Defendant banks.  VISA and MASTERCARD are engaged in interstate commerce and are doing business and are present in the Northern District of California. Venue of this action against VISA and MASTERCARD, and Defendant banks and all other bank members of VISA and MASTERCARD, is proper in this court.

INTRADISTRICT ASSIGNMENT

4.   The basis for assignment to the San Francisco Division is that a substantial part of the events which give rise to the

-2-

claims of the named Plaintiff occurred in San Francisco, Sonoma and Alameda Counties.

PARTIES

5.  Plaintiff SHERI L. KENDALL, dba BALA HAIR SALON ("BALA") is a resident of Sonoma County and is licensed to do business and does business as a beauty salon in Sonoma County. BALA presently has VISA and MASTERCARD contracts with one or more Defendant banks, or their co-conspirators, and has "sold" (deposited) VISA and MASTERCARD credit and debit receipts, or electronic equivalents, to one or more Defendant banks, or their co-conspirators, for deposit in their commercial demand deposit bank accounts.

6.  Plaintiff JAMES MASER and MAIZ HOLDING COMPANY, a California Corporation, dba PICANTE COCINA RESTAURANT (collectively referred to as "PICANTE") are residents of Alameda County and are licensed to do business and are doing business as a restaurant in Alameda County.  PICANTE presently has VISA and MASTERCARD contracts with one or more Defendant banks, or their co-conspirators, and has "sold" (deposited) VISA and MASTERCARD credit and debit receipts, or electronic equivalents, to one or more Defendant banks, or their co-conspirators, for deposit in their commercial demand deposit bank accounts.

7.  VISA and MASTERCARD (referred to as "Consortiums", *U.S. v. Visa U.S.A.* Inc., 344 F. 3d 229, 242 (2nd Cir. 2003)) are bank

card associations whose proprietary members include Defendant banks, other bank members, regional banking associations, and other financial institutions.  The Consortiums' actions of which complaint is herein made were carried on for the economic advantage of their members and with their knowledge and consent.

8.  Defendant WELLS FARGO BANK N.A., a subsidiary of WELLS FARGO & COMPANY ("WELLS FARGO") is a nationally chartered bank with offices in the Northern District of California.  It engages in interstate commerce.  It participates in the management of and has a proprietary interest in VISA and MASTERCARD.  It is an "acquiring bank" in that throughout California, and most other states, it acquires from Plaintiffs or other retailers and class members ("Merchants") VISA and MASTERCARD credit and debit receipts, or electronic equivalents, for deposit in their commercial demand deposit bank account at the face amount less a minimum merchant discount fee which is established, both directly and indirectly, by the Consortiums. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 338 (S.D.N.Y. 2001).  WELLS FARGO, along with all other acquiring Consortium members, Defendant banks and co-conspirators, charges to Plaintiffs or other Merchants the amount of the interchange rate fixed by the Consortiums as the minimum merchant discount fee.  The interchange rate is most of the merchant discount fee.  WELLS FARGO knowingly, intentionally and actively participated in an individual capacity with the Consortiums in charging the fixed

minimum merchant discount fees.  Normally WELLS FARGO and other

member banks of VISA and MASTERCARD do not charge a fee, or

charge a much lower fee, when they buy (accept) checks from their

retail customers for deposit in the bank customer's commercial

account.

9.  Defendant BANK OF AMERICA, N.A., a subsidiary of BANK

OF AMERICA CORPORATION ("BANK OF AMERICA") is a nationally

chartered bank with offices in the Northern District of

California.  It engages in interstate commerce.  It participates

in the management of and has a proprietary interest in VISA and

MASTERCARD.  It is an "acquiring bank" in that throughout

California, and most other states, it acquires from Plaintiffs

or other retailers and class members ("Merchants") VISA and

MASTERCARD credit and debit receipts, or electronic equivalents,

for deposit in their commercial demand deposit bank account at

the face amount less a minimum merchant discount fee which is

established, both directly and indirectly, by the Consortiums.

*U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 338 (S.D.N.Y.

2001).  BANK OF AMERICA, along with all other acquiring

Consortium members, Defendant banks and co-conspirators, charges

to Plaintiffs or other Merchants the amount of the interchange

rate fixed by the Consortiums as the minimum merchant discount

fee.  The interchange rate is most of the merchant discount fee.

BANK OF AMERICA knowingly, intentionally and actively

participated in an individual capacity with the Consortiums in

charging the fixed minimum merchant discount fees.  Normally BANK OF AMERICA and other member banks of VISA and MASTERCARD do not charge a fee, or charge a much lower fee, when they buy (accept) checks from their retail customers for deposit in the bank customer's commercial account.

10.  Defendant U.S. BANK, N.A, a subsidiary of U.S. BANCORP ("US BANK") is a nationally chartered bank doing business in the Northern District of California.  It engages in interstate commerce.  It participates in the management of and has a proprietary interest in VISA and MASTERCARD.  It is an "acquiring bank" in that throughout California, and most other states, it acquires from Plaintiffs or other retailers and class members ("Merchants") VISA and MASTERCARD credit and debit receipts, or electronic equivalents, for deposit in their commercial demand deposit bank account at the face amount less a a minimum merchant discount fee which is established, both directly and indirectly, by the Consortiums. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 338 (S.D.N.Y. 2001).  US BANK, along with all other acquiring Consortium members, Defendant banks and co-conspirators, charges to Plaintiffs or other Merchants the amount of the interchange rate fixed by the Consortiums as the minimum merchant discount fee.  The interchange rate is most of the merchant discount fee.  US BANK knowingly, intentionally and actively participated in an individual capacity with the Consortiums in charging the fixed minimum merchant discount

fees.   Normally US BANK and other member banks of VISA and MASTERCARD do not charge a fee, or charge a much lower fee, when they buy (accept) checks from their retail customers for deposit in the bank customer's commercial account.

CO-CONSPIRATORS

11.   Defendants' co-conspirators include at least all banks and other financial institutions doing business in the United States, engage in interstate commerce, and have a management and proprietary interest in VISA and/or MASTERCARD, have knowledge of and consent to the acts of the Consortiums of which complaint is made herein.   Each is an "acquiring bank" in that it acquires from Plaintiffs or other merchants and class members VISA and/or MASTERCARD credit and debit receipts, or electronic equivalents, for deposit in their commercial demand deposit bank account at the face amount less a merchant discount fee which is established, both directly and indirectly, by the Consortiums. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 338 (S.D.N.Y. 2001).   Most of the merchant discount fee is the interchange rate which is established by the Consortiums.   The acquiring banks knowingly, intentionally and actively participated in an individual capacity with the Consortiums in following these fees charged to Plaintiffs or other Merchants.   The co-conspirators also include Third Party Processors ("*TPPs*") who process for merchants VISA and/or MASTERCARD credit and debit receipts, or electronic equivalents, for deposit in the merchants' demand deposit accounts in banks at the face amount less a fee the minimum amount of which they know is established both directly

-7-

and indirectly by the Consortiums.  Normally each co-conspirator and other *members* of VISA and/or MASTERCARD do not charge a fee, or charge a much lower fee, when they buy (accept) checks from their retail customers for deposit in the bank customer's commercial account.

12.  The final judgment or decree rendered in *United States v. Visa U.S.A., Inc.* 163 F. Supp. 2d 322 (S.D.N.Y. 2001), affirmed 344 F. 3d 229 (2nd Cir. 2003), cert. den. __ U.S.__(2004), is prima facie evidence against the Consortiums as to all matters respecting which said judgment would be an estoppel between the parties thereto. 16 U.S.C.A. sec. 16(a).

13.  The "fixed" interchange fee which the Consortiums claim to have been held legal in *Nat'l Bankcard Corp. v. Visa U.S.A., Inc.* 779 F. 2d 592 (11th Cir. 1986)(*NaBanco*), has not been applicable to the activities of the Consortiums since long before January 1, 2004 because:

a.  The *NaBanco* fee was based on a cost reimbursement methodology to reimburse the card issuing bank for costs, including the cost of bearing the risk of loss, which methodology the Consortiums no longer use.  Now the Consortiums primarily consider each others rates and secondarily the rates of competitors. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 337 (S.D.N.Y. 2001).  The Consortiums charge differing interchange rates to different classes of merchants based, in part, on the degree to which a

-8-

given merchant category needs to accept general purpose cards. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 340 (S.D.N.Y. 2001).  This latest methodology requires that each merchant acquirer charge for its merchant discount at least the appropriate Consortium's interchange rate; otherwise there could be no differentiation among merchants.  For the period for which there are available data, the average VISA merchant discount rate always exceeded the VISA interchange rate.  Evans and Schmalensee, *Paying with Plastic* (MIT Press 2001, p. 130.  There is thus in effect among all financial institutions and TPP's an agreement to charge a minimum merchant discount set by the Consortiums.

b.  Both Consortiums have market power in the general purpose card market. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 340-41 (S.D.N.Y. 2001).  At present volumes of transactions, the Consortiums would survive with a zero interchange fee. Evans and Schmalensee, *Paying with Plastic* (MIT Press 2001, p. 280.

c.  Commencing in 1991 the Consortiums created special lower interchange fees for super markets as an incentive for acquirers to sign up more of such merchants for market reasons benefiting their members which had nothing to do with card issuer's costs or

risk of loss. Evans and Schmalensee, *Paying with Plastic* (MIT Press 2001, p. 132-33.

    d.  Commencing prior to January 1, 2004, many merchant applications for acceptance of Consortiums' transactions for deposit showed minimum VISA and MASTERCARD discount pricing exactly at the interchange rates established by the Consortiums. Some contracts between merchants and their acquirers provide for direct pass through of interchange rates.

    e.  Both MASTERCARD and VISA negotiated individual incentive compensation packages with select members involving millions of dollars to compete for their business. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 382, 403-4 (S.D.N.Y. 2001).

14.  Long prior to January 1,2004, the Defendant Banks and the co-conspirators herein either expressly, by acquiescence, understanding or practice adopted the interchange fees set by each of the Consortiums for the various categories of merchants as the minimum merchant discounts for each class of merchants and such was known to each of the Defendant Banks and co-conspirators.

15.  John Reed the CEO of CitiGroup, the parent of CitiBank, one of the largest issuers of payment cards, in 1997 proposed to the management of VISA including the CEO of BANK OF AMERICA and others that the clearing and settlement of payment cards be merged with the clearing and settlement of checks so as

to give an individual issuer of cards control of its own brand and merchant relationships with the result that there would be more competition among banks.  This proposal was rejected, and thereafter CitiBank made an agreement with MASTERCARD for card issuance which expressly prohibited CitiBank from interfering with the cash flow of other members of MASTERCARD.

CLASS

16.  Plaintiffs represent the class of all persons and business entities in the United States who are retailers, businesses, professions and merchants, including those "on-line", and presently have VISA and/or MASTERCARD merchant contracts with one or more member banks of Defendants VISA and/or MASTERCARD and/or a TPP pursuant to which they have "sold" (deposited) VISA and MASTERCARD credit or debit receipts, or electronic equivalents, to one or more member banks for deposit in their commercial demand deposit bank account and have thereby incurred VISA and/or MASTERCARD merchant discount fees which are established, both directly and indirectly, by the Consortiums.  The class does not include the named Defendants, their co-conspirators, their directors, officers, or members of their families, or those merchants who negotiate merchant discounts directly with VISA and/or MASTERCARD or receive payments directly from them.

17.  The minimum merchant discount fees established by the Consortiums have harmed and continue to harm the interests of

retailers, businesses, professions and merchants, including those "on-line", throughout the United States.  The members of the class are so numerous that joinder of all members is impracticable.

18.  Defendants' relationships with the class members and Defendants' practice of assessing VISA and/or MASTERCARD merchant discount or interchange fees with respect to class members have been substantially uniform.  Questions of law and fact will predominately be common to the class.

19.  The named Plaintiffs have no conflict of interest with class members and have retained counsel competent and experienced in federal and state antitrust litigation.  The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

20.  Defendants have acted, continue to act, refused to act and continue to refuse to act on grounds generally applicable to the class, thereby making appropriate damages and injunctive relief with respect to the class as a whole.

21.  This action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members is not only impracticable, but impossible.  The damages suffered by certain members of the class are small in relation to the expense and burden of individual litigation and therefore it is highly impractical for such class members, individually, to attempt redress of the

defendants' merchant discount and interchange fees and to enjoin price fixing. There will be no extraordinary difficulty in the management of this class action. Common questions of law and fact exist with respect to all class members and predominate over any questions solely affecting individual members. Among the questions of law and fact common to the class, many of which cannot be seriously disputed, are the following:

(a) Whether the Defendant banks, co-conspirators and the Consortiums have violated the Sherman Act by fixing the minimum merchant discount for credit cards. ("Credit cards" as used throughout includes general purpose bank credit and charge cards.)

(b) Whether the Defendant banks, co-conspirators and the Consortiums have violated the Sherman Act by fixing the minimum merchant discount for debit cards.

(c) Whether Defendant Consortiums market on behalf of their members by establishing lower interchange fees for both debit and credit transactions for large volume merchants.

RELEVANT MARKET

22. The relevant product market is acquisition of receipts from general purpose credit, charge and debit cards, or electronic equivalents, for deposit in commercial bank accounts.

23. The relevant geographic market is the United States.

**FIRST CLAIM FOR RELIEF (Credit Cards)**
**DAMAGES FOR VIOLATIONS OF SECTION ONE**
**OF THE SHERMAN ACT AGAINST**
**VISA, MASTERCARD, BANK OF AMERICA, WELLS FARGO, US BANK**

24.  Plaintiffs BALA and PICANTE reaver each and every averment in paragraphs 1 through 23 as if fully set forth herein.

25.  VISA and MASTERCARD each is a combination of banks which are in competition with each other, directly or indirectly, which as such combination sets an "interchange fee" which is in effect a minimum merchant discount fee to be paid by merchants to an acquiring financial institution directly or through a third party processor on deposits of proceeds of merchant sales paid for by one of the Consortiums' credit cards. ("Credit cards" as used throughout includes general purpose bank credit and charge cards.)  The separate decisions of VISA and MASTERCARD as to the interchange fees or minimum merchant discounts are horizontal restraints on competition, and are not established by free competition, nor would they be absorbed by merchants and PlaintiffS BALA and PICANTE in a competitive system, e.g. checks.

26.  Plaintiffs BALA and PICANTE, and all others similarly situated, must pay a merchant discount fee upon the deposit of VISA and MASTERCARD credits, whereas the deposit of checks, which entails more processing, is usually without such fee to the depositor.  Increases by VISA and MASTERCARD of the

interchange fees have resulted in increases in merchant discount fees.

27.  Plaintiffs BALA and PICANTE, and all others similarly situated, have a dilemma where each merchant must individually choose to accept VISA and MASTERCARD in order to meet the competition; however all are worse off as a result due to the expense of the merchant discount fee.

28.  VISA and MASTERCARD and Defendant banks and all other co-conspirators obtain supracompetitive profits by the assessment of merchant discount fees on the deposits of Plaintiffs BALA and PICANTE, and all others similarly situated.

29.  The reality is that VISA and MASTERCARD are able to charge substantially different prices to various categories of hundreds of thousands of merchants who must take credit and debit cards at any price because their customers insist on using those cards.

30.  Plaintiffs BALA and PICANTE and all others similarly situated have been damaged by the payment of merchant discounts, in as yet an undetermined total amount, which total amount should be trebled.

### SECOND CLAIM FOR RELIEF (Debit Cards)
**DAMAGES FOR VIOLATIONS OF SECTION ONE
OF THE SHERMAN ACT AGAINST
VISA, MASTERCARD, BANK OF AMERICA, WELLS FARGO, US BANK**

31. Plaintiffs BALA and PICANTE reaver each and every averment in paragraphs 1 through 23, 25 through 30 except that

in this claim for relief they limit their claims to deposits of VISA and MASTERCARD debit card receipts.

32. The holding in *NaBanco* did not refer to deposits made from proceeds of purchases made with VISA debit cards, and its reasoning would not apply to debit purchases because the risk of loss to debit card issuers is minimal and usually borne by the merchant. *U.S. v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 331 (S.D.N.Y. 2001).

**THIRD CLAIM FOR RELIEF (Consortium Marketing)**
**DAMAGES FOR VIOLATION OF SECTION ONE OF THE SHERMAN ACT**
**AGAINST ALL DEFENDANTS**

33. Plaintiffs BALA and PICANTE reaver each and every averment in paragraphs 1 through 23 as if fully set forth herein.

34. Prior to January 1, 2004, but after the decision then on appeal in *U.S. v Visa U.S.A.*, both Consortiums commenced to market on behalf of their members by lowering interchange fees for both debit and credit transactions with large volume merchants in some cases by negotiating directly with such merchants for the purpose of increasing use of members' cards with such merchants as well as increasing the acquisition of deposits of proceeds of card transactions by Consortium members or co-conspirators. The lowering of interchange fees as described herein would not operate to increase use of cards and to act as incentive for acquirers to sign up merchants to use each Consortium's cards if it were not understood that acquirers would lower merchant discounts to correspond with the reduction in interchange fees. If members of the consortiums and the co-

conspirators had not knowingly, intentionally and consciously followed the merchant discounts set by the Consortiums but instead had competed among themselves for merchant deposits by lowering merchant discounts, the merchant discounts for all merchants would have been at least as low as those set for large volume merchants.

35.  VISA has made payments directly to merchants to induce increased VISA credit and debit card sales which necessarily results in a net lowering of costs to those merchants.

36.  The activities of each Consortium described in paragraphs 34 and 35 have occurred and do occur with the knowledge and consent of the members of each Consortium, and they continue to occur up to the present.  Such activities are authorized only by the Capper-Volstead Act, 7 U.S.C. sec. 291; perhaps 15 U.S.C. sec. 17, and the Webb-Pomerane Act, 15 U.S.C. secs. 61-65.  Defendant Consortiums do not meet the requirements of those acts.

<u>FOURTH CLAIM FOR RELIEF</u>
15 U.S.C. Sec. 26, SECTION 16 OF THE CLAYTON ACT
AGAINST ALL DEFENDANTS

37.  Plaintiffs BALA and PICANTE reaver all the preceding paragraphs as if set forth in this claim.

38.  This claim is brought under Section 16 of the Clayton Act, 15 U.S.C. § 26.

39.  Plaintiffs BALA and PICANTE and all those similarly situated seek against VISA, MASTERCARD, Defendant banks, member banks, and their co-conspirators that this Court order

Defendants to cease and desist from violations of the Sherman

Act described in the preceding claims for relief.

WHEREFORE, Plaintiffs BALA and PICANTE respectfully demand:

1. That the Court declare, adjudge and decree that
   Defendants have committed the violations of federal
   law alleged herein.

2. That the Court enter an order pursuant to Rule 23 of
   the Federal Rules of Civil Procedure permitting this
   action to be maintained as a class action on behalf of
   the class specified herein.

3. That the court award damages sustained by the
   Plaintiffs BALA and PICANTE, and members of the class,
   in an amount to be proved at trial, to be trebled
   according to law, plus interest, including prejudgment
   interest, reasonable attorney's fees and costs of
   suit, and such other and further relief as this Court
   may deem just and proper.

4. That the Court order:

(a) That Defendants cease and desist from setting the
    interchange fee and minimum the merchant discount fee.

(b) The elimination from VISA and MASTERCARD of all joint
    marketing activities.

5. That Plaintiffs BALA and PICANTE be awarded their costs
   of suit including reasonable attorney's fees.

Plaintiffs BALA and PICANTE hereby demand trial by jury of all issues properly triable thereby.

Dated:  April 25, 2005

Attorneys of record for Plaintiffs SHERI L. KENDALL, dba BALA HAIR SALON, JAMES MASER, MAIZ HOLDING COMPANY, dba PICANTE COCINA RESTAURANT, on Behalf of Themselves and All Others Similarly Situated


By:_____
        RICHARD J. ARCHER, ESQ.
          ARCHER & HANSON


By:_____
        JAMES A. KOPCKE
      GOLDEN · KOPCKE, LLP

-19-