IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERI L. KENDALL, et al., | |
| Plaintiffs, | No. C 04-04276 JSW |
| v. | **ORDER GRANTING VISA U.S.A. INC.'S AND MASTERCARD'S MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND** |
| VISA U.S.A. INC., et al., | |
| Defendants. | |

Now before the Court are the motions of defendant VISA U.S.A. Inc. ("VISA") and defendant MasterCard International Incorporated ("MASTERCARD") to dismiss and/or to strike each of Plaintiffs' claims against them pursuant to Rule 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. Having carefully read the parties' papers and considered the arguments and the relevant legal authority, the Court hereby GRANTS VISA's and MASTERCARD's motions to dismiss Plaintiffs' claims without leave to amend.

**BACKGROUND**

Plaintiffs are various merchant, retail and service businesses who bring this action against VISA, MASTERCARD, and the Bank Defendants, who are credit card issuing and/or acquiring banks (collectively, "Defendants"). Through their member banks, VISA and MASTERCARD (for ease of reference, the network defendants are referred to herein as "the Consortiums") issue various forms of payment cards. Member banks can issue VISA or

1 MASTERCARD payment cards to consumers and set interest rates, fees, and other terms for
2 cardholders.  (First Amended Complaint ("FAC"), ¶¶ 8-11.)   Member banks also individually
3 contract with retailers on behalf of VISA or MASTERCARD to purchase payment card
4 transactions.  *Id*.  Member banks may function as either "issuing" banks or "acquiring" banks,
5 or both.  *Id*.

6 When a customer pays with a payment card, the "acquiring" bank purchases the payment card receipt (or electronic equivalent) from the retailer for the amount of payment less a "merchant discount fee."  Through the VISA or MASTERCARD system, the acquiring bank then receives reimbursement from the cardholder's "issuing" bank for the purchase price less an "interchange fee" – a preset fee consented to by all issuing and acquiring banks on the VISA or MASTERCARD network.  The issuing bank then profits by the amount of the interchange fee, while the acquiring bank profits by the amount of the merchant discount fee less the interchange fee.  In a credit card system, the issuing bank rather than the merchant bears the risk of nonpayment by the cardholder.  *See National Bancard Corp. (NaBanco) v. Visa U.S.A., Inc*., 779 F.2d 592, 595 (11th Cir. 1986).

Plaintiffs' claims are directed at payment card transaction fees.  In their first amended complaint, Plaintiffs allege that Defendants' conduct in setting merchant discount and interchange fees amounts to horizontal price fixing under Section 1 of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 1.  Plaintiffs again allege that Defendants' conduct violates Section 16 of the Clayton Act, 15 U.S.C. § 26.

VISA moves to dismiss the amended complaint and/or to strike certain allegations pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).  VISA contends that the first and second causes of action are barred by *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), the third cause of action fails to failure to state a claim, and the fourth cause of action does not provide an independent ground for relief.

MASTERCARD moves to dismiss the amended complaint on the basis that Plaintiffs lack standing to assert the first and second causes of action for violations of Section 1 of the Sherman Act based on the alleged fixing of the interchange fee and the "Citigroup allegation,"

2

that the third cause of action fails to state an independent antitrust claim, and that the fourth cause of action fails to provide a basis for injunctive relief for a violation of another antitrust law.

Because the issues raised in both VISA and MASTERCARD's motions to dismiss overlap significantly, the Court will address the substance of the two motions together, and delineate the differences where appropriate.

## DISCUSSION

**A.   Legal Standard on Motion to Dismiss and Motion to Strike.**

A motion to dismiss for failure to state a claim will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). The Court is not, however, bound to accept as true conclusory allegations of law or legal conclusions couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *Arpin v. Santa Clara Transp. Agency,* 261 F.3d 912, 923 (9th Cir. 2001) (internal quotation omitted). For private antitrust claims, if the facts "do not at least outline or adumbrate a violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust." *Rutman Wine Co. v. E&J Gallo Winery,* 829 F.2d 729, 736 (9th Cir. 1987).

Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *California Dept. of Toxic Substance Control v. ALCO Pacific, Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations omitted). Impertinent material "consists of statements that do not pertain, or are not necessary to the issues in question." *Id*. Motions to strike are regarded with disfavor because they are

3

1  often used as delaying tactics and because of the limited importance of pleadings in federal
2  practice. *Colaprico v. Sun Microsystems Inc.*, 758 F. Supp 1335, 1339 (N.D. Cal. 1991). The
3  possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause
4  the trier of fact to draw unwarranted inferences at trial is the type of prejudice that is sufficient
5  to support the granting of a motion to strike. *Cal. Dept. of Toxic Substances Control*, 217 F.
6  Supp. at 1028.

### B.  Standing Under Section 1 of the Sherman Act.

The Supreme Court in *Illinois Brick*, in an effort to "increase effectiveness and deterrent power [of] private treble damages suits [which are] vital to the enforcement of the antitrust laws," held that recovery for damage incurred by "indirect purchasers" is barred. *Illinois Brick*, 431 U.S. at 736; *see also Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 325-26 (9th Cir. 1980). The Court held that permitting the use of pass-on theories "essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge from direct purchasers to middlemen to ultimate consumers. However appealing this attempt to allocate the overcharge might seem in theory, it would add whole new dimensions of complexity to treble-damages suits and seriously undermine their effectiveness." *Illinois Brick*, 431 U.S. at 737. Courts are not permitted to determine "what portion of [an] illegal overcharge was 'passed on' . . . and what part was absorbed by the middlemen" because such an analysis would "involve all the evidentiary and economic complexities that *Illinois Brick* clearly forbade." *Royal Printing*, 621 F.2d at 327*; see also Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998) ("The indirect purchaser rules serves to avoid the complications of apportioning overcharges between direct and indirect purchasers and to eliminate multiple recoveries.")[1]

---

[1] In their original complaint in this matter, Plaintiffs alleged that VISA and MASTERCARD set only the interchange fee, which then "established" the basis or floor for the merchant discount rates. (*See* Complaint, ¶ 21(a).) Plaintiffs lack standing to assert such claims because they have not suffered the requisite antitrust injury from the Consortiums' setting of the interchange rate. *See, e.g., Associated General Contractors of Cal., Inc. v. State Council of Carpenters*, 459 U.S. 519, 539 (1983) (plaintiff failed to demonstrate

4

### 1. Allegations That the Consortiums Indirectly Set Merchant Discount Fees.

In their amended complaint, Plaintiffs attempt to aver that VISA and MASTERCARD somehow, indirectly, set the merchant discount fees. However, viewed in context, each allegation is constructed on the premise that VISA's and MASTERCARD's interchange fee sets the minimum, or floor, for the merchant discount fee. (*See, e.g.,* FAC ¶ 8 ("a minimum merchant discount fee . . . is established, both directly and indirectly, by the Consortiums"); ¶ 9 (merchants are charged by the acquiring banks "the amount of the interchange rate fixed by the Consortiums as the minimum merchant discount fee"); ¶ 11 ("a merchant discount fee . . . is established, both directly and indirectly, by the Consortiums. Most of the merchant discount fee is the interchange rate which is established by the Consortiums.") (citation omitted).)

Plaintiffs' damages theory is based therefore on the allegation that the Consortiums set the interchange fee to acquirers who then pass it along to merchants as a component of what Plaintiffs allege to be inflated merchant discount rates. To the extent Plaintiffs contend that therefore the Consortiums "indirectly" set the merchant discount rates, those claims are precluded by operation of the *Illinois Brick* bar on recovery for indirect purchasers. *See Illinois Brick*, 431 U.S. at 746; *see also Kansas v. Utilicorp United Inc.*, 497 U.S. 199, 216 (1990) (holding that there was no exception to *Illinois Brick* even where the direct purchaser almost certainly passed on the entire cost of alleged overcharge to the indirect purchaser); *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) ("indirect purchasers of price-fixed goods may not maintain an antitrust damage action for overcharges passed on to them by direct purchasers from the defendant.")

---

requisite antitrust injury because it was "neither a consumer nor a competitor in the market in which the trade was restrained."); *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 103, 113 (1986) ("a private plaintiff must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'") (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 497 (1977)).

This contention is the independent basis for much of MASTERCARD's current motion to dismiss. To the extent Plaintiffs' claims are premised upon the setting only of the interchange fee, MASTERCARD's argument is well-taken. However, the First Amended Complaint alleges that the Consortiums set, either directly or indirectly, the merchant discount rate, which, for the purpose of resolving the pending motions, is the more troubling of the allegations now before the Court.

5

### 2. Allegations That the Consortiums Directly Set Merchant Discount Fees.

In addition to the claims of indirect control over the merchant discount rates which are expressly precluded by the holding in *Illinois Brick*, Plaintiffs attempt to aver that VISA and MASTERCARD directly set the merchant discount rates. (*See, e.g.,* FAC ¶¶ 8-11, 16 ("minimum merchant discount fee . . . is established . . . directly . . . by the Consortiums").)

First, in order to avoid the bar of *Illinois Brick*, Plaintiffs cannot allege that VISA and MASTERCARD directly negotiate with certain merchants to promote the Consortiums' acceptance in the marketplace. Plaintiffs have expressly excluded from the class all "merchants who negotiate merchant discounts directly with VISA and/or MASTERCARD or receive payments directly from them." (FAC, ¶ 16.) Those merchants that directly negotiate with the networks are explicitly excluded from the class of Plaintiffs and therefore, are not currently before the Court alleging an antitrust injury for the direct setting of the merchant discount rates by VISA or MASTERCARD.

Second, to the extent that Plaintiffs aver that the Consortiums directly set the merchant discount rates for those merchants in the plaintiff class, those allegations are conclusory. Dismissal of claims is proper where there is an absence of facts alleged sufficient to support a cognizable legal theory. *Navarro,* 250 F.3d at 732. The Court is not bound to accept as true conclusory allegations of law or legal conclusions couched as a factual allegation. *See, e.g., Papasan,* 478 U.S. at 286; *Arpin,* 261 F.3d at 923. For purposes of deciding a motion to dismiss, the Court does not have to accept every allegation in the complaint as true in considering the sufficiency of the allegations; rather, the Court should examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

In context, each time Plaintiffs aver that the Consortiums set the merchant discount fees directly, Plaintiffs quote *United States v. VISA U.S.A., Inc.* ("*VISA I*") in which the Southern District of New York court stated "[m]erchant acceptance of a card brand is also defined and controlled at the system level and the merchant discount rate is established, directly and

6

indirectly, by the networks." 163 F. Supp. 2d 322, 338 (S.D. N.Y. 2001) (citing the trial and deposition transcripts before that court); see FAC, ¶¶ 8-11.

### a. Estoppel Effect of Statement in *VISA I*.

Plaintiffs cite the decision by the New York court as evidence that the merchant discount fee is established, directly or indirectly, by the Consortiums. Plaintiffs, however, cannot rely on the collateral estoppel effect of the statement in that matter. Collateral estoppel bars the relitigation of an issue that is (1) identical to an issue (2) actually litigated and decided in prior litigation, when (3) the determination of the issue in the prior litigation was critical and necessary to support the judgment rendered in the prior litigation. *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001). The burden to demonstrate the presence of these elements is on the party seeking to establish collateral estoppel effect. *Id.* at 1033. Further, the factors are applied strictly. It is not sufficient that an issue is "factually similar" to the one in an earlier case; to satisfy the collateral estoppel factors, the issues must be "identical" and involve the same facts and surrounding context. *Western Oil & Gas Ass'n v. United States EPA,* 633 F.2d 803, 809 (9th Cir. 1980).

Having failed to come forward with *any* showing to establish that the elements of the collateral estoppel doctrine are satisfied, the Court cannot rely on the brief statement made in *VISA I* on the factually complex record before it in order to determine the veracity of the conclusory allegations presented here. It is not clear from the opinion of the New York court that the issue was even contested by the parties or that it was actually litigated. *See, e.g., Gospel Missions v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir. 2003) (rejecting collateral estoppel argument where prior issue was "neither framed in the pleadings nor contested by the parties" in the earlier litigation). The context of the court's determination and the record before that court are completely different from the context and record presented to this Court. There has been no showing that the issues are identical, that they were actually litigated and decided in the prior litigation, or that the determination of the issue in the prior litigation was critical and necessary to support the judgment rendered in the prior litigation. *See Pool Water Prods.*,

1  258 F.3d at 1031.  Therefore, the statement in the *VISA I* opinion has no preclusive effect on
2  this Court.  *See id.* at 1030-31.[2]

### b.   The Factual Record Does Not Support Plaintiffs' Theory.

Lastly, the Court was urged by both parties to examine closely the record before the Court as presented in conjunction with the motions for summary judgment, to determine whether the Court should grant leave to amend with regard to the conclusory allegations in the amended complaint.  Having reviewed the evidence submitted with the pending summary judgment motions, the Court is satisfied that the factual record does not support Plaintiffs' claims that the Consortiums directly set the merchant discount fees.  The uncontroverted evidence demonstrates that neither VISA nor MASTERCARD are directly involved in the setting of the merchant discount rates.  (*See* Declaration of William Sheedy in Support of VISA's Motion for Summary Judgment ("Sheedy Decl."), ¶ 17 ("the merchant discount fee is the fee set by Visa acquirers and/or their designated third-parties, in their sole discretion based on agreement with their merchants, and in competition with other Visa acquirers"), ¶ 18 ("Merchant discount fees are negotiated only between merchants and acquirers, and not with Visa."), ¶ 19 ("It is certainly the case that IRF [interchange reimbursement fee] is a cost that acquirers typically seek to recover in the overall fees they charge merchants and thus IRF generally has an impact on merchant discount rates.  But it is only one of a number of costs acquirers face, including costs for terminal deployment, risk management, customer service, marketing and sales – to name a few."), ¶ 20 ("Visa does not set these merchant discount fees.  My understanding is that the extent to which acquirers can generate an appropriate revenue stream while recovering these various costs, including IRF, varies greatly and depends upon the particular acquirer and the particular merchant.  The way in which acquirers recover their costs and generate revenue is entirely within their discretion.").  *See also* Declaration of Steven Jonas

---

[2] In this regard, without converting the current motion before the Court to a motion for summary judgment, the Court has reviewed the full evidentiary record presented by the parties in their motions for summary judgment.  Although the motions for summary judgment filed by VISA and MASTERCARD, which are fully briefed and set for hearing on August 19, 2005, will not be necessary as the Court by this order will dismiss the case, the Court has substantively reviewed those motions and the evidence submitted in conjunction therein for purposes of resolving the current motions.

8

in Support of MASTERCARD's Motion for Summary Judgment ("Jonas Decl."), ¶ 15 ("MasterCard does not set any acquirer's merchant discount fee; the acquirers set the merchant discount fees, which are agreed to by merchants in contracts between merchants and their acquirers. Further, MasterCard has no input into whether or how an acquirer factors any interchange fee amount into its merchant discount fee level.").)

Because the essential facts demonstrating that neither VISA nor MASTERCARD set the merchant discount fee are uncontested, and having given Plaintiffs adequate opportunity to contest those facts in conjunction with the pending motions for summary judgment, the Court is satisfied that the factual record fails to support Plaintiffs' conclusory allegations in the First Amended Complaint that the Consortiums directly set the merchant discount fee.[3]

### 4. Exceptions to *Illinois Brick* Do Not Apply.

Arguing only that Plaintiffs have averred in the amended complaint that the Consortiums set the merchant discount rates directly, Plaintiffs fail to address whether an exception to the rule set out in *Illinois Brick* applies in this matter. Indirect purchasers can sue for damages if there is no "realistic possibility that the direct purchaser will sue" over the antitrust violation. *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145 (9th Cir. 2003) (citing *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980)). During oral argument on these motions, the parties were specifically asked to address the issue of what entity would have standing to make an antitrust claim against the Consortiums should the Court find that Plaintiffs lack standing. Plaintiffs failed to address the question directly, and merely reiterated the holding in *Freeman*. The Consortiums contended that the acquiring banks would have standing to sue on an antitrust theory regarding the incorporation of the set

---

[3] The failure of Plaintiffs to come forward with any evidence to the contrary also dictates that this Court grant the pending motions to dismiss without leave to amend. It is clear from the record before this Court that Plaintiffs have failed to demonstrate that they have standing to sue and have failed to garner evidence which would enable them to generate a sufficient basis for the Court to find standing should leave be granted. Because the first amended complaint represents the fifth attempt to allege sufficient claims (three complaints filed in *Reyn's* and two attempts in this matter), and because, after development of the factual record, Plaintiffs are still unable to marshal sufficient facts to confer standing, the Court finds in its discretion that amendment in this particular context would be futile and grants the present motions without leave to amend.

9

interchange fee in the passed on merchant discount fees. Although the record reflects that a number of the members of the Board of Directors of the Consortiums is comprised of bank members,[4] there are apparently on the order of 8,000 acquirers in the VISA network and 9,000 members in the MASTERCARD network, a large portion of which are acquiring banks. (Sheedy Decl., ¶ 3; Jonas Decl., ¶ 4.) Certainly, any number of those banks could sue and would be granted standing to do so.

In addition, the Court notes that processing agents for the member banks have standing to sue and could make, in essence, the claims alleged herein. In this regard, the Court takes judicial notice of claims against VISA by First Data Corporation, currently pending before the undersigned, a lawsuit which contains, *inter alia,* allegations of antitrust violations with regard to the setting of interchange rates.[5]

### C. Third Cause of Action Fails to State a Claim Upon Which Relief May Be Granted.

To the extent Plaintiffs attempt to aver an independent third cause of action for violation of Section 1 of the Sherman Act under a "consortium marketing" theory, this allegation fails for the same reasons stated herein. The allegation of price differentials between customers does not state a claim for an antitrust violation. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 887 (9th Cir. 1982); *USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 512 (7th Cir. 1982) ("[N]o general principle of antitrust law forbids charging different prices to different customers").

Based on the foregoing, Plaintiffs' Section 1 Sherman Act claims against VISA and MASTERCARD are DISMISSED without leave to amend.

### D. CitiGroup Allegations Are Stricken.

MASTERCARD moves against paragraph 15 of the amended complaint, which concerns the allegations that the 1997 proposal by the CEO of CitiGroup to merge the processes

---

[4] *See* Sheedy Deposition at 46-47; Jonas Deposition at 44-45.

[5] *See VISA U.S.A., Inc. v. First Data Corporation, et al.*, C02-1786 JSW; *see also National Bancard Corp. (NaBanco) v. VISA U.S.A., Inc.*, 596 F. Supp. 1231 (S.D. Fla. 1984), *aff'd,* 779 F.2d 592 (11th Cir. 1986).

10

of clearing and settlement of payment cards with the clearing and settlement of checks was rejected.

Although MASTERCARD's motion, properly a motion to strike, is rendered moot by this Court's determination that the claims against the Consortiums must be dismissed, the motion is also GRANTED on the merits on the basis that, having no essential or important relationship to the claim for relief, such allegations are immaterial. *See California Dept. of Toxic Substance Control*, 217 F. Supp. 2d at 1032. In addition, there is no indication that Plaintiffs have standing to make such a claim as the allegation concerns card issuers, not interchange, merchant acquirers or merchant discount fees. Accordingly, Plaintiffs cannot make a claim for antitrust injury for allegedly anticompetitive effects on issuers. *See, e.g., Associated General Contractors,* 459 U.S. at 539 (plaintiff failed to demonstrate requisite antitrust injury because it was "neither a consumer nor a competitor in the market in which the trade was restrained."); *see also Cargill*, 479 U.S. at 113. Such immaterial and baseless allegations are independently stricken.

### E. Section 16 Clayton Act Claim.

Because Plaintiffs' have failed to state a claim under Section 1 of Sherman Act against VISA, Plaintiffs' fourth claim for relief, under Section 16 of the Clayton Act, 15 U.S.C. § 26, predicated upon a violation Section 1 of the Sherman Act, is also dismissed without leave to amend. *See Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 109 (1986) (threatened antitrust injury is a prerequisite to equitable relief); *see also Lucas Auto. Eng'g,* 140 F.3d at 1234-35.

**CONCLUSION**

For the foregoing reasons, VISA's and MASTERCARD's motions to dismiss and/or to strike are GRANTED without leave to amend.

**IT IS SO ORDERED.**

Dated: July 25, 2005

　　　　　　　　　　　　　　　　　　　　　　／s／ Jeffrey S. White
　　　　　　　　　　　　　　　　　　　　　JEFFREY S. WHITE
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE